Good morning. Good morning to the court. Yolanda Crystal Felix, pro bono counsel for petitioner Mr. Apolinar Martinez-Hernandez. I would like to reserve four minutes for rebuttal. Four? Four minutes. Okay, thank you. The court should grant this petition and remand back to the immigration judge to properly assess the aggregate risk that Mr. Martinez will be tortured and to that assessment. The first legal error committed in this case is that the IJ and agency used the wrong legal standard when they applied matter of JFF to Mr. Martinez who proposed multiple theories of torture risk. The agency failed to assess the aggregate risk that Mr. Martinez will be tortured considering all the sources together. In Velazquez-Samayoa v. Garland, which I found, it is possible that an applicant might bring a cat claim in which he posits multiple theories for why he might be tortured, but one of those theories entails a hypothetical chain of events occurring in sequence, and in such a case the ruling articulated in JFF will often be a little practical help to the case. I think one of the things that government makes a waiver argument against you, I believe, and what standard of review should we apply to the BIA's determination that the challenges to the nexus finding were waived, and do you agree with the government that we should review for abuse of discretion? No, Your Honor, and I don't believe that the standard is abuse of discretion. I don't have the standard with me, Your Honor. I focused on... Well, apparently there's a little confusion about the standard, but, I mean, there's some cases seeking otherwise, but I guess, I guess one thing that I'm struggling with here overall is I'm trying to figure out, you're asking for a remand, and I'm just trying to figure out, you know, there's discussions about whether, you know, on the nexus analysis or whether he's more likely or not to face persecution due to possible homelessness and institutionalization, and then you challenge the expert conclusions, but it's, I'm just trying to figure out how, how he wins here on, there's, it seems like all the facts are before the court, because if I understand this, wasn't your client found to be not competent and had help from the start, right? That's correct, Your Honor. He was appointed a qualified representative. So it seems like we know what all the facts are, and so with these arguments, I'm just trying to figure out, there's different ways that you can look at the evidence, but I'm just trying to figure out how your client wins here. Sure, there's three different ways that Mr. Martinez can win. First, it's, if it's remanded so that the judge can consider the aggregate risk of harm. In this case, Mr. Martinez explained that he fears harm or torture from different sources. It's not just the institutionalization. It's also harm by police themselves and harm by the mafia, and that's throughout the record, but the IJ ignored that when it came to the facts are fully developed or analyzed within the immigration judge's decision, because she does talk about a fear of harm in the withholding analysis from the mafia and the police, but she doesn't discuss it within the CAT claim itself, and so we're, so the first way is to, the first way Mr. Martinez wins is if it gets sent back, and then the, his fear is considered in the aggregate risk of harm. The second way is if he, his expert, he has two experts in this case. One was a psychologist, and the second was a country conditions evidence expert, but the judge, there's no indication in her decision that that expert's declaration was considered at all. She references it, but only to say that the fact that they never, he never met Ms. Rodriguez. Well, that was it, that was to consider when you look at it and say, well, weighing it against other things, saying, okay, I'm not saying, you know, you talked about the conditions and all of that, but you never met the guy, you reviewed his report, I get to see the person, other people, there's all this other evidence. That's a tough rock to push uphill to say that that was error. I don't believe it's a tough rock at all. I think that Ms. Rodriguez is a country conditions expert, and country conditions expert can base their opinion based on their research and past experience. In this case, Ms. Rodriguez was able to read the medical records in Mr. Martinez's case, read the declaration, and based on that information, was able to form this opinion that he is likely to be institutionalized. Are you, are you aware of any errors with respect to the withholding? There's also errors with respect to the waiver issue, right? I believe that in the BIA appeal, it was addressed by Mr. Martinez's former counsel. He did argue that Mr. Martinez was being harmed on account of the mental health protected social groups. He explained that to prove that you're likely to be harmed based on a disfavored group, you have to look at the group risk overall and not the individual risk. And so that was argued, and we don't believe the argument was waived. So we think that at a minimum, this should be remanded back to the court. So there isn't any evidence in the record that your client was ever institutionalized in Mexico, is that correct? That's correct, Your Honor. And there's apparently, he didn't, he got arrested for running someone over with a vehicle or something, but he wasn't convicted, is that right? That's correct, Your Honor. Is there any evidence in the record of him being institutionalized in the United States? There is no record regarding that. Well, I have to go by what the evidence is. Is there evidence in the record about that? No, no, Your Honor. Okay, and he's gonna live with his parents, right? That's an inference that the judge made. However, up until the cross-examination, Mr. Martinez was presenting that he did not have a place to live in Mexico, that he would become homeless because he's not able to get a job. Whether he stated it on direct or cross, he does state at his hearing that he is likely to live with his parents. It wasn't in those terms. It was, do you think that you can live with your parents? And he says, I don't know. I believe so. I am their son. So this is coming from a person who has mental illness and has not had communication. So it's very different from family support. And importantly, on the record it states that his parents are elderly and disabled and not working. So you can infer that he can live with his family, but it's not clear. And we're on a substantial evidence standard, right? And so we have to say that the, we have to give it to the agency unless, you know, a reasonable person would be compelled to find a different way. So if the petitioner himself is stating at his hearing, I probably can live with my parents, there's other indications in the record that his parents are involved in his life and aware of him and seemingly supportive of him. How is it that somebody would be compelled to conclude differently than the IJ concluded here? Sure. The only evidence of the record of the family support is the fact that he put on the record, I may be able to live with them because I'm their son, and also a letter from the family. But that letter was for the sole purpose of supporting a proposed particular social group based on the murder of his brother in Mexico. They didn't state, they didn't talk about anything else in the letter, they just spoke specifically to the murder of his brother in Mexico. His brother is a police officer, right? His brother. And he claimed that his brother got murdered by the cartel or something because of work that he did as a police officer? Yes, so he, his brother was a police officer. He stopped being a police officer and then three months after that, he was killed by who he believes was a cartel or mafia. So where's your client now? He's in the United States. So back to the substantial evidence, it can be inferred that he can stay with family, but there's also evidence in the record stating that even with family support, people like Mr. Martinez can be institutionalized because there's a lack of community resources. Well, okay, but when you say substantial, do you have to show at this level that it compels the result that you're asking for? I think that's what Judge Forrest was talking about. If there's evidence of both and the IJ or, you know, and the BIA go a certain way, isn't there a compel standard that you have to overcome? I believe so, Your Honor, but I believe the record does compel that, especially in light of the other country conditions evidence that show that he is gonna be unable to get the resources that he needs to be able to live within the community with his family. Other than the risk of institutionalization, what other types of evidence of persecution did your client put on? Sure, so when Mr. Martinez went to Mexico in August 2019, he declared that he was beat up by the cartel or the mafia, and when he sought help, so he was beat up, he broke his nose, he hurt his ribs, and he sought help from the Mexican police. The Mexican police then arrested him, and in Dr. Cook's evaluation, she states that police call him crazy and mistreat him because of that, and in this particular case, he was detained and he witnessed abuses in jail, and he also knows about abuses from his brother who told him about corruption and abuses that police committed. So he didn't say that in the past he suffered harm by police, but he has stated that he fears future harm by police, and that was not addressed by the immigration judge. Can you, I mean, my review of the record is that he didn't raise that argument below. He raises it now, but below he was arguing about the institutionalization issue, which I think is what Judge Thomas is getting at here. Can you maybe, as you're waiting to do your rebuttal, can you give us a record site for where he actually raised, I'm going to be persecuted or tortured by police? I have those. I'll save the rest of my time for rebuttal. Okay, and then you'll be ready. And I'll be, all right, let me go ahead and answer that if that's okay. I have multiple sites in the record. First, Mr. Martinez, in his form I-589 declares that he's afraid of the police, and that's on AR-637. Then in his administrative record, 640, he indicates about police corruption, and he talks about when he arrested, he saw people abused in the jail. Then on direct testimony, he explains that he fears harm by the police, and even in the closing argument, he said it was argued that particularly from Mexican police, he do believe that all of the claims of fear, including claims of fear of the mafia, were proposed and addressed in the IJ decision within the withholding context, but not within the CAT context. And CAT requires that you consider all relevant evidence and aggregate it. You can't just look at each claim of fear individually. I'll save the rest of my time. All right, thank you.  All right, good morning. Good morning, and may it please the Court, Victor Lawrence on behalf of the Attorney General. This Court should deny this petition for review because substantial evidence in the record supports the agency's conclusion that Mr. Martinez did not satisfy his burden of proof by establishing his eligibility for protection under the Convention Against Torture. Furthermore, Mr. Martinez did waive his claim for withholding a removal. He did so because the immigration judge specifically had an alternate dispositive finding that the harm that Mr. Martinez feared was on the basis of criminal motive or possible revenge motive, but he did not argue that in his appeal to the Board, and therefore he waived that issue, and he further failed to exhaust it by breaking it up with this Court by challenging the immigration judge's alternative dispositive argument. Well, in his briefing to the BIA, he spent five pages discussing why his mental health issues will cause him to face persecution. Isn't that sufficient to raise the nexus issue? No, because the immigration judge had multiple findings on nexus, one of which was to say that he did not show a nexus between the harm that he feared, that being the harm by the criminals in Mexico, the mafia types. He didn't show a nexus between that and a protected ground. As we know, criminal motive is not a protected ground under the Immigration Nationality Act. But what does that do for his theory about his fear of institutionalization? I mean, I understand your criminal motive argument, but I don't see it as an alternative basis in the sense that it's a dispositive alternative basis. It is to that theory, but not to every theory he raised. And, Your Honor, had Mr. Martinez argued to the Board that perhaps there was more motives than one that the immigration judge found, then perhaps that would be a good argument, but he didn't argue that. So, what we have here on the record is immigration judge making an alternative dispositive finding. But didn't he argue in his brief to the Board that he was going to be at risk of persecution because of mental illness, specifically? Yes, I mean, he tried to show that there was a nexus between that, but I'm not sure that the Board actually thought that he was actually arguing that, and I'm not sure he was. But what's clear, again, is that there was an alternate dispositive finding by the immigration judge, which is clearly set forth. I believe it's at page 66 of the record. I share Judge Forrest's question, but I don't see why that alternate finding is dispositive. We're talking about withholding, so he just has to show that his mental illness is a reason for persecution, and I guess why hasn't he done that? Why didn't he, or at least attempted to do that? Well, it's more than showing that his mental illness is a reason for possible persecution. It's showing that he's a member of a particular social group, and that's the reason why he fears persecution on account of that basis. Okay, but so I'm looking at the record on AR-26. He says that he risked becoming a target of persecution as a Mexican man with severe mental illness who suffers from psychosis, so it seems to me that that is laying out the nexus. And had he argued that by also suggesting that there was no criminal motive with respect to the immigration judge's other dispositive finding, then perhaps we would be in a different posture at this point. But that's not what he did, and I think that the board reasonably concluded that he had interrupted. You seem to be linking what I see as two separate theories. His theory, I'm going to be targeted by the mafia and others, and the agency said, well, that's a criminal motive related to that whole fear. And then I fear that I'm going to be institutionalized and suffer persecution through that path, through that theory, right? Criminal motive has nothing to do with that, and it seems like you're trying to mesh those two things, and I'm not understanding why. Okay, well, let me unmesh it for a moment. I'll look at it under your paradigm, which I understand, that there are two different theories. So if you look at it under the theory of just that he had a mental health condition and that's why he would be persecuted, we still have the immigration judge's finding where she says that it's equivocal at best, meaning that there's not a probability. Right, I totally understand that that's what the record is, and so then on that theory, perhaps we have nexus being argued for the reason that Judge Thomas just cited in the record because his BIA brief does talk about nexus as relates to his mental health condition, and then we would get to futility, perhaps, right? Like, even if you kept this argument going, is there anything there? And that's your argument about, well, the record isn't equivocal. I accept that. No, I guess what you're saying is if we don't buy your waiver argument, you're going to tell us how you don't lose? Correct. If you, should the court not accept the waiver argument, you still have the finding of the agency that the record is equivocal at best with respect to whether or not he's going to be persecuted or, in the case of the cat claim, tortured on account of his mental illness or just generally if he goes back to Mexico. And here, I think what we have is the agency was presented at the time that he appealed from the Immigration Judiciary Board. In that brief, there was only one theory on how he would be persecuted or how he would be tortured if he went back to Mexico, and it involved a chain of events, and that chain of events required that first he would be homeless, come to the attention of the authorities, the authorities would bring him to a mental institution, and then he would be in that mental institution as a result of his condition. But let me ask you this. Yes. Can we use the BIA's determination as to no likelihood of torture under cat to indicate the BIA would similarly find no likelihood of persecution under withholding of removal? So I'd be afraid to answer that with respect to all cases, but in this case is yes, because, because the theory that you're going on, that he would be persecuted, it's a higher standard, standard that where he would be tortured as opposed to just persecuted under, under cat. So I think that in this case, you can reasonably use those facts to suggest that yes, there's, there, he has no basis on a withholding claim because he can't even show that, he can't show either persecution or torture if he were to go back to Mexico. Well, do we have all the other facts? I'm aware of no facts, additional facts that the court would need. Perhaps if there's something that's on your mind, I'd be curious because I think all the facts are in the record. But in this case, what happened was that there was an assumption by this expert, Rodriguez, that he did not have family support and that would lead to his institutionalization in Mexico. Remember, all his claims about mental health condition have to do with what would happen when he got to a mental health institution. He did not argue in his brief to the board, and therefore it's not exhausted, any other theory that, of how he would be tortured in Mexico. He did not argue that the police would torture him in the first instance. He only argued that he would be tortured in a mental health institution. He did not argue anything about his brother, the in a mental health institution. It was purely this idea that he would become homeless, be taken to a mental health institution and tortured in that situation. But the expert at page 668 of the record clearly indicated that she believed that he did not have family support. And it was the immigration judge reasonably relied on other evidence in the record to say, you know, that's outweighed by what we have here because we have direct evidence that the family was supportive of this individual even up to a week prior to the merits hearing. And we have the petitioner's own testimony that he would live with his parents if he were returned to Mexico. So all of Dr. Rodriguez's opinions of what would happen. Did that court also consider that he had never been institutionalized? It did. You know, there was a lot of discussion during the immigration court hearing of whether or not there was an institutionalization in the past because there was some indication, I think Dr. Cook had believed that he may have been institutionalized. But then the immigration judge pressed for more information on that and counsel, his counsel agreed that there was no evidence that there was any prior institutionalization either in Mexico or the United States. So with respect to the issue of whether he would suffer torture again, there was no evidence that he would become homeless. And under the analysis, the JFF analysis of the chain of the link of events, which is still valid if there's only one theory of torture, you know, Velezquez clearly said if there are two more theories then we're not sure that JFF works. So the IJ did not find him not credible, but the IJ said he has a lot of mental illness and I think that is the lens that he looks through and perhaps gave less credence to what he said under certain, is that, would that be a correct statement? I would use, I would say it differently. What the immigration judge did was he believed that the that the petitioner did have a subjective fear of future harm. But when it came to the objective analysis, he, the immigration judge, she, excuse me, indicated that the expert said that he had a history of delusions and was not reliable in his historical presentation of events. So what the immigration judge said is we can't necessarily rely on his testimony regarding objective evidence. We have to look at other evidence in the record to kind of put that together to see whether or not it's it's credible. So what they weren't, the immigration judge wasn't saying that he's less credible in certain circumstances, but saying that because of the expert's opinion that he had delusions and trouble recounting past events, that it was necessary to look at other objective evidence in the record. Okay, well, if the panel has no additional questions, the Attorney General respectfully requests that the court deny this petition for review. Thank you for your attention. So just to go back to a question earlier, Mr. Martinez can win this remand based on the three arguments. The first is finding that the IJ did not consider the aggregate risk of harm to Mr. Martinez. The second is that the IJ did not, finding that the IJ did not provide sufficient reasoning when rejecting credible expert testimony. In this case, a lack of past institutionalization does not mean that he's not going to get institutionalized in the future. This court, the BIA, other circuits don't need... Well, it doesn't mean that per se, but let's say if he had been institutionalized ten times before in Mexico, isn't that better evidence of the likelihood of it's happening again? Absolutely, that is... So, just, it is what it is. It doesn't mean it, but it is evidence that, of likelihood. That's true, Your Honor, I agree with that. I think it goes even further than that in this particular case, because my understanding of the record is that your client returned to Mexico multiple times after coming to the United States, and despite that, he'd never had issues of being institutionalized. And one of the record sites that you gave on your first argument references his statement in one of his applications that he went to the police in Tijuana to get help after he had been in an assault. And instead of helping me, they arrested me, but then they released me. So this whole idea that he's going to come to the attention of law enforcement who are going to institutionalize him is difficult on this record, because he's been there a bunch of times and it's never happened. The times that he has been there have been very limited, and from 2000 to 2019, he was in the United States. That's when his, as an adult, his mental illness symptoms started to appear. He did go back in August 2019. He was there for a very short period of time where that happened. He declared he went into hiding, and then he sought protection here in the United States. So the short stay within Mexico is very different from an indefinite stay in Mexico, where he will lack resources and decompensate and likely come to the attention of multiple sources of harm, mafia, police, or mental health institutions. All right, your time's expired. You've gone into overtime. I want to thank both of you. Unless, do any of the panel have? Thank you. We have no additional questions. I want to thank both of you for the argument, and thank you, government, for coming all the way from Washington, D.C., and thank you, Pro Bono Council. We are always very appreciative of Pro Bono Council, because it frames the issues much better for the court, and especially in situations where people really need the help. So thank you both for your argument. This matter will stand submitted.
judges: CALLAHAN, FORREST, THOMAS